cases. Case number 4-15-0748. People versus Larry Staples. Appearing for the state. Excuse me. Appearing for the appellant defendant is attorney Benjamin Wimmer and for the appellee is attorney David Manchin. Good morning. Mr. Wimmer, are you ready to proceed? Yes, I am. You may. May it please the court. Benjamin Wimmer of the State Appellate Defender's Office on behalf of the defendant, Larry Staples. This court should reverse Mr. Staples' conviction and remand for a fitness hearing for a newly assigned trial judge because the trial court went against the manifest weight of the evidence in finding that Staples was fit to stand trial. And, in the process, abandoned its role as a neutral fact finder at the fitness hearing. Now, the relevant fitness standard in this case was set forth by the U.S. Supreme Court in Dusky in 1960. In order to be fit to stand trial, a defendant must, among other things, be able to consult with defense counsel with a reasonable degree of rational understanding. Now, in this case, on a motion of defense counsel, and without objection from the state, the trial court appointed Dr. Marilyn Marks Frey to examine Mr. Staples and opine whether he was fit to stand trial. She did so and opined that he was not fit to stand trial because he failed to satisfy the Dusky standard. More specifically, she opined that her testing revealed that he suffered from an executive functioning deficit. He was unable to adequately process stimuli, information rather, and overwhelmed with information or stimuli. Putting things a bit more colloquially, Dr. Frey stressed that this was consistent with defense counsel's complaint that Staples was unable to adequately concentrate or focus when she consulted with him about the case in an attempt to prepare a defense. Now, on its face, Dr. Frey's opinion was credible, internally consistent, and sufficient to distinguish Staples from a run-of-the-mill difficult client who simply doesn't want to cooperate with defense counsel. Dr. Frey didn't indicate that his failure to concentrate was volitional. She believed it was a genuine cognitive deficit, which he speculated, although could not confirm, may have had an underlying neurological cause. Similarly, Staples' mental impairment was not minor or insignificant. On the clinical side of things, Dr. Frey reported that she administered what was called the booklet category test, a three-stage test with three stages of escalating difficulty designed to assess Mr. Staples' information processing abilities. Staples essentially flat-lined at the second stage of the test, responding incorrectly to every stimulus presented before he became so frustrated and agitated that he refused to continue. On the more practical side of things, in addition to defense counsel's repeated complaints that her inability to adequately communicate with Staples was hamstringing her preparation of the defense prior to trial, there was evidence in open court of the difficulties that was caused by this. Such as Staples at one point for the first time revealing the existence of potential defense witnesses for the first time in open court rather than in a privileged attorney-client conversation. And most obviously, Staples, apparently to defense counsel's surprise, essentially confessing to murder at the end of his direct examination testimony. So this was, at least according to Dr. Frey, a significant handicap that left him unfit to stand trial. Now, because there was a facially credible opinion that Staples was unfit to stand trial, a reasonable fact finder couldn't have just rejected her opinion out of hand. In order to reject her opinion, there needs to be some evidence in the record that would provide a basis for concluding that opinion. That's set forth by the Illinois Supreme Court in McKinstry in 1984, followed most recently to my knowledge by the Illinois Appellate Court in Lucas in 2009. It's set forth in greater detail in the briefs. There wasn't evidence in the record here that would justify a fact finder in disregarding Staples' opinion. The trial court relied chiefly on three factors in doing so. First, the trial court and the state both frequently construed Dr. Frey's opinion as being that Staples was not fit to stand trial because there was a risk that he would engage in angry, explosive behavior in the courtroom. Dr. Frey did say that she was concerned with Staples' explosive behavior, and it's pretty much undisputed that Staples does have a history of explosive behavior and anger issues. But that wasn't the basis of her finding him unfit. The basis was the executive process, in this order. Although she did note, for instance, that he appeared to become agitated, perhaps on the brink of an outburst when he refused to continue with the booklet category test, she stated that he had begun to answer all days of stimuli on the test before he was on the verge of an angry outburst. And indeed, she also stated that she received what she described as a very low score of 9 out of 25 on the portion of the MSE2 test designed to measure memory with interference, the ability to recall recently heard information after being asked to deal with something else. And there was no report that Staples had any sort of anger in connection with that test, despite the fact that it also revealed a related processing problem. In short, although Dr. Frey did note that Staples had anger issues, he was not unfit because of the anger issues. He had the anger issues in part because of the underlying mental deficit that rendered him unfit. In your brief, you assert that Dr. Frey offered a, quote, facially credible opinion that he was unable to rationally assist the defense counsel. You don't cite to the page of the record where that appears, and I don't know where it is. It seems to me that that's really one of the important aspects of this question. She may have said that she thought he was unfit to stand trial, but the question is, can he assist in his defense? Was he able to consult with a lawyer with a reasonable degree of rational understanding? And at what point in her report does she address that? It's in the record, page 139. It's where she sets forth the fact that he suffers from an executive functioning deficit, explains roughly what that is, and stresses in italics that it's consistent with the defense counsel's report that he's unable to adequately focus or concentrate when she's attempting to consult. How about unable to rationally assist the defense counsel? That's her quote. To briefly go through the two other major factors that the trial court relied upon, there was the opinion of Dr. Boyd finding Steeples fit to stand trial in a case that was brought in 2006-2007. The Boyd opinion is not inconsistent with the basis of Frey's opinion, in large part because he wasn't looking closely at the issue of Steeples' memory, information processing ability, or ability to aid his attorney. Steeples was referred to Boyd on the basis of prior diagnosis of bipolar disorder. There's nothing in the record indicating that Boyd performed the sort of testing that Dr. Frey did, and the only indication we have they examined Steeples' memory at all was basically they said his memory was grossly intact, indicating that he didn't see any problem, but he wasn't looking very closely. Even if it were otherwise relevant, it is seven years old. A person's fitness can change over time. Finally, the trial court relied heavily on the fact that Mr. Steeples was able to function in certain contexts other than an attorney-client conference about the case, such as two weeks working at a construction job, five days in the Illinois Department of Corrections, and appearances in court. However, as set forth by the Illinois Supreme Court in Easley from 2002, context is critical in determining whether or not a person's ability to sort of function in a given context suggests fitness to stay in trial. To what extent can we, including the trial court, consider the defendant's conduct through trial itself as pertaining to this issue? I mean, the trial court can consider the defendant's behavior in the courtroom both up through the fitness hearing and through the remainder of the case, so long as it's relevant to the issue of the defendant's fitness. Well, specifically, the transcript contains an awful lot of pages, direct examination, cross-examination, redirect examination, in which the defendant responds appropriately to questions, does he not? Correct, Your Honor. What inference could the trial court and should this court draw from that? I don't think that it provides a sufficient basis to conclude that he's not suffering from the... It wasn't my question. What inference can we draw from that? The inference being, doesn't that support the trial court's conclusion? Okay. No, Your Honor. It's not... Why not? Well, because, again, it's the nature of the conversation that you'd be wanting to have in a sort of searching conversation with the defendant in an effort to examine the potential underlying evidence in the case. So a guy can have 100 pages of rational discourse on examination and yet not be able to cooperate meaningfully with his lawyer? Well, again, it's not... First of all, I wouldn't say it's 100% sort of rational. First of all, it's just a general, you know, tell me your story, complain about Gina. He's obviously very good at complaining about Gina. There's about 30 pages of him just going over various text messages he sent to Mrs. Jibberson, which, at points, it's borderline incomprehensible what he's trying to say and ultimately results in him, you know, essentially confessing to murder, which, again, defense counsel appeared not to expect given that she just asked him the same question twice in a row. His direct examination testimony, the mere fact that he's able to go on and on, basically sort of giving his story, isn't an indication that he's able to, you know, focus on other issues that defense counsel might need to examine as part of preparing a defense. Knowing more information about Jibberson unconnected to him, people that she might have fought with on previous occasions, which some evidence of that did manage to come out at trial. But just the sheer length of his testimony, dozens on its own, supported an inference that he's able to have, you know, productive attorney-client conversations preparing a case. Indeed, the fact that he essentially, you know, confessed on the stand suggests that, you know, the conversations with defense counsel were in large part not very productive. I mean, it's unfit to mistakenly say the truth, assuming that's the truth? Not necessarily unfit to say the truth. Obviously, you know. I mean, a more competent defendant wouldn't understand his purpose at that point is to lie? Obviously, you know, it's illegal to lie on the stand. I mean, what do you say about, gee, he wound up ultimately admitting to this crime? Well, maybe if he did it, it would be bad tactics, but I mean. Extremely bad tactics. But, you know, he just got confused for the moment and realized he's there testifying under oath and all that. You know, you've said that repeatedly, and I find it a little bit troubling that a sign of unfitness is a guy tells the truth from the witness stand. Isn't that the bottom line, essentially what you're arguing? Let's assume he actually committed the crime. That's really what you're arguing, isn't it? It's the fact that he's testifying at all, frankly, that he's going to be confessing. I mean, as you put it a moment ago, it's bad tactics, but it's alarmingly bad tactics. I mean, if I had a client that had informed me that he had, you know, committed the crime, I would strongly advise him not to testify. For all we know, he may have disregarded that, but, I mean, there's nothing in the record to suggest that. Also, changing the subject, when you talk about can he cooperate with his lawyer and follow in the systemist defense and all that, doesn't the record show that sometimes when he was testifying and there was an interruption because of an objection and the trial court ruled on it, that the defendant was able to pick up where that question left off? Yes, that's correct. Okay, now, call me crazy, but isn't that indicative of a guy who is, for lack of a better way to put it, not exactly out of touch with what's going on in reality and being able to converse about a matter of importance? Well, again, the issue is not that he's completely out of touch with reality. I mean, there's no issue here. Well, follow a dialogue. Tell the story. I mean, you know, can he cooperate with his lawyer? Part of this should mean his lawyer, as I've seen, I was a trial judge and had several of these kinds of cases. This is a guy who's on a different planet. He can't follow a story, can't communicate, can't keep up an explanation or a dialogue. Here we have a fellow who not only apparently can do that but remembers where he was after the trial court rules on an objection. Isn't that inconsistent with the notion of a fellow who can't follow questions or a dialogue with his lawyer well enough to be able to meaningfully communicate? No, Your Honor. I mean, the notion of memory with interference that was set forth by Dr. Frey, in her opinion, is that a defendant has to be able to return to an initial subject after dealing with something else. It's not his job to respond to the objections. That's defense counsel's job. Right. So, I mean, there's no indication that, you know, he's being asked to change his focus in order to deal with this. He's simply waiting. Being clear of counsel, I was a trial judge a long time, and I've had the experience where witnesses on the witness stand ask a question, objection, judge, that's improper, blah, blah, blah, discussion back and forth. Objection overrule. You may answer. I've had lots of witnesses who then look at me and said, would you repeat the question? Where were we exactly? You know, I mean, that would be the norm. It's the exceptional witness with exceptional concentration powers who could pick up like that. Isn't that true? I mean, I haven't obviously practiced as long in the. But wouldn't you expect it to be the case where a witness, and hearing this discussion between counsel and the court, might have lost his train of thought or where exactly were we going or what was the question? This defendant appears to be, at least a few instances, fully capable of picking up his train of thought, where he was. Well, again, I mean, there's no indication that he put it down or was particularly paying attention to the, you know, objection colloquy between the attorneys and the court. I mean, furthermore, just in general, even if. So as we're evaluating, was the trial court's ruling against the manifest weight of the evidence finding him fit? Aren't these things I've been raising with you all supportive that the trial judge was right? I mean, no, Your Honor. I mean, they don't specifically address his ability to focus through multiple, you know, topics of conversation that you would expect to find in a consultation between attorney and client. Consultations between attorney and client don't occur in open court, and they aren't like what occurs in open court. Can I interject just for a second? Yes. Justice Steigman, I would incorporate exactly what he said, in that it is the exceptional witness who does track and answer questions after the scenario which he brought up. But I also certainly understand that defense counsel and your questioning of the defendant's fitness and not following what is likely counsel's advice not to make those admissions on the stand. So I think that point is not lost on the panel that, in fact, that was a red flag. Thank you, Your Honor. But moving on just briefly, even if there were a basis here on which a reasonable fact finder could have chosen to disregard, I'm sorry, not disregard, reject Dr. Frey's opinion, the trial court here wasn't acting as a neutral fact finder at the time he did so. And this is most evident by the way the trial court began the hearing. Essentially, by refusing to postpone it to allow Dr. Frey to provide live testimony and indicating right at the outset that he believed appointing Dr. Frey had been a mistake. It was contrary to his own observations. Mr. Wimmer, you'll have time in rebuttal. Thank you. Mr. Manson? Good morning, Your Honors. May it please the court, counsel. This case presents a somewhat unusual fitness case. In most cases this court sees is did the parties enter into the right kind of stipulation and did the trial court conduct its own independent examination or did it just rubber stamp the expert's opinion? What we have here is a trial court who carefully considered all the evidence, carefully considered an expert's report that never stated in any shape or form that the defendant was unfit as unable to assist his attorney. Let's pick up where Mr. Wimmer was going at the end here. You'll have time in rebuttal to respond to this. Did Judge Schick overstep or engage in any type of investigative process that was outside the rules? No, Your Honor. He followed the statute exactly as it should be followed. He has a motion by defense counsel to appoint an expert to determine if there's a doubt of fitness. The motion only says defendant has a prior history. The trial judge would not have been required to appoint an expert at that point, but out of caution he appoints the expert. He then gives back an expert's opinion that says defendant has memory problems and may be unfit because of a risk of disrupting proceedings. Again, that report would not have required an evidentiary hearing. It could have just dismissed it on that basis saying that there's no bona fide doubt of fitness established by this report. But again, the trial court holds the hearing. The statute expressly says that a trial court in a fitness hearing can call its own witnesses and conduct its own investigation. How does the trial judge find out about Mr. Drake and the employment defendant had with that construction company? I don't recall how he found exactly Dr. Drake, I mean Mr. Drake. It was mentioned in the expert's report as far as his prior employment, and I think it must have been listed in the request for appointment of public defender as far as, you know, what are my assets and liabilities. The record really doesn't show how, to my recollection, how he found Mr. Drake. And what Mr. Drake, again, the expert relied upon the defendant's statement as to his prior history in determining whether or not the defendant was fit or not. So looking into the defendant's history of employment would, in fact, seem to be a reasonable thing. And it could go either way. You have the employer come and testify, this guy's a nutcase. He couldn't get along with anybody. He couldn't follow directions worth a darn. I had to fire him after two days because he just couldn't be worked with. Or you have the thing, he's the best employee I've ever had, and I wish he could have stayed a little longer. So it's information that doesn't point one way or the other and tell us before the court to determine, you know, okay, what does this information mean? The statute says the court can call its own witnesses and make its own investigation. The trial court did this. He told the parties the exact information he was seeking, gave them an opportunity to examine it. Defense counsel agrees that the trial court consider the transcripts of the recent proceedings and the expert's opinion from the other earlier expert. So to say that this judge is going above and beyond what the statute says he can do is just incorrect. He's doing exactly what the trial court is allowed to do. And there's no prejudging of this case. I mean, if there's any prejudgment, he would have just kicked out that first motion to appoint an expert because the simple statement he has a prior mental history is not enough to require any kind of inquiry. So this is a judge who, as he said, in an excess of caution, giving the defendant a break, trying to say, okay, this is my job. It would be a violation of your rights for me to allow you to go to trial with being unfit. That's why we're conducting this proceedings. And the manner in which he did so I think was exemplary. This is exactly what the statute calls for him to do. We have an expert opinion that doesn't say he cannot assist his attorney. We have the investigator and the defense counsel who say, this guy is hard to work with. I had to talk with him for five hours about this one report. We have the investigator who said that he was all over the place, but he gave me names of people who investigated. His conduct at all the hearings, both before and after, and in People v. Lucas, which is the side of my brief, that's the case that says you can consider the defendant's testimony at trial in determining whether the trial court was correct in its fitness determination. Based upon all the defendant's conduct in the trial court, the representations of the attorney and the investigator, the defendant's own statements in all the many hearings before and after, the trial court's determination that this defendant was fit to stand trial was not contrary to the manifest way that the evidence. The only expressed opinion as to fitness given by the doctor, it was in his explanation to the attorneys when they, or his supplemental report, where he says he can become fit with medication that will prevent outbursts in trial. So the expert's concern was not that he cannot cooperate, assist his attorney in preparing for trial, it's that this guy is going to blow up in court. And that is simply not the standard for unfitness. So the trial court was not required to accept that opinion, nor was he required to draw the implications suggested by defense court, just because he's got a number of problems, he's therefore going to have problems working with his attorney. Yes, there were problems, but given the attorney's statements at that fitness hearing. But if you look over the whole course of the case, there were five or six hearings before this where a counsel has said nothing about having trouble working with this guy. The colloquy at the pre-trial hearing where the defendant says, I want a new attorney, my present attorney's not cooperating with me, she's not visiting with me often enough. And then there's a colloquy in court as to, okay, I missed three visits because my car broke down and I was busy with other things and just couldn't get there. It shows that the defendant can and could cooperate and assist his attorney. His conversations with the expert, while he has trouble on memory tests, he tells the expert his criminal history, why he was in jail before, he tells him prior his employment history, he tells him the history of this offense, lays out the offense as basically self-defense. That's how the expert phrases it, if I recall correctly. So this is not a guy, it's not a defendant like, I forget the name of the case cited by the defendant, where the defendant has total amnesia about everything. They cannot remember anything. Okay, because you have total amnesia about everything, you're not fit for trial because you simply cannot assist your attorney. Here we have a guy whose memory regarding the events is established by his statements to the expert, his statements to his fellow inmate, and then his testimony trials that shows his memory and recollection as to what, as to the events that he's charged with is perfectly intact. We haven't talked about Sean Beck here. I'm not sure, reading the briefs, just how much weight Judge Schick put in that. He didn't. He actually said that this guy, I don't really put much weight on it, it's just information that's there. But again, it's evidence that was presented by the state without objection. It's like the judge said, it's information that's there, you can plug it in for whatever it's worth, and there was no error in receiving that. The fact that this defendant has the wherewithal to plan a PTSD defense shows that he is fit, shows that he is capable of participating in the trial and assisting his attorney if he wants to. It also suggests, is he also faking his unfitness on the memory tests? I mean, like I said, the trial judge did not put much information in front of him, but it was information properly before him that could be determined for what it's worth, and he said it wasn't worth much. But again, you take all the evidence that was before the judge. You have the defendant's conduct in this case. You have his conduct in the other cases that the trial judge takes notice of with the agreement of defense counsel. You have this expert who says he's unfit because he's a danger of disrupting the proceedings. He doesn't say he's unfit because he can't cooperate or assist. And then you have the defendant, after that, appearing in many subsequent hearings before trial, again showing he can assist, and then he testifies in the trial. The fact that he confesses on the stand, I don't think that that shows he's unfit. He's not the first defendant that gets up on the stand and gives testimony that hangs himself. And it is the defendant's absolute right to testify, and counsel cannot stop him if he wants to. I mean, the counsel has no choice. If the guy insists on going to testify, you have to let him. And his testimony, while rambling, was shown clear memory, and it's really supported the trial court's determination that this guy is fit. He may be odd in other ways, but that's not the standard. The standard is, does he understand the charges? Does he understand the proceedings? There's no doubt about that. And can he assist? And if you take the record as a whole, the trial judge's determination that he could assist was not contrary to the manifest weight of the evidence. You began your argument, Mr. Manchin, by appropriately observing that this is the unusual case. I don't recall seeing one quite like it. The typical issue is, as you put it, was the stipulation properly received, et cetera. If we were to affirm in this case, to what extent are we opening a door's box to a rather activist sort of trial court pursuing this question and going beyond the normal process where you just, for lack of a better way to put it, the trial court's essentially a passive agent and waits for the parties to present evidence to it. Well, the fitness proceeding is sort of sui generis as part of the trial because the trial court is given a duty on his own to raise the defendant's fitness. Plus, the statute says the trial court can call its own witnesses and conduct its own investigation. If any pandora's box. That's a very unusual statutory provision. You've been at this a long time. I've not seen that. That was my question. I've not seen that before, and I've never seen it. It's never been challenged as infringing on any. Is there some other provision in the criminal law that speaks the same way? It essentially says as if this were an inquisitorial system, not the adversarial one? Well, no, Your Honor, but, again, fitness is unique because the statute also gives the judge the affirmative duty to determine for himself if the defendant is unfit. He also has the duty to raise the question himself if he sees something. Sui sponte. Even if nobody else says anything, if he thinks the defendant is wacko, he has to call it and hold the hearing. I think that's the technical legal term. Yeah. But, you know, as far as Mr. Drake was asking about that earlier, here, was there any evidence that the judge talked directly with Mr. Drake outside of the court process, other than to request a letter? I think the record just shows that he requested a letter, and then he, after presenting the letter to the attorneys, they called him in, but they were relying upon the letter. Then in follow-up to what Justice Steinman was just talking about, this statutory process would allow for the trial judge to engage in conversations with folks like Mr. Drake directly? The statute says, conduct, call your own witnesses, conduct your own investigation. That tends to this process. Well, let me ask this question, following up on Justice Sears' question. Is the record clear on how Mr. Drake's involvement in the life of the defendant even came to the attention of the trial judge? I do not recall, Your Honor. Other than my speculation that he might have been enlisted on the request for appointment of counsel, or mentioned by some other way, but I don't recall how he came. He's a former employer? Yes. Was he a current employer, do you know? I think he was a matter of months or weeks between the time he left and the time this offense occurred, so it was a rather recent thing. And getting to my point, the judge didn't just do his own investigation. He told the parties, okay, this is the information I have sourced. This is the files I have requested. Okay, this is what I'm going to do. You can examine it. He informs the parties of what's going on. This is not where he's, okay, I talked to Mr. Drake, and this is what he told me. He doesn't rely upon information outside the record that nobody else knows about. He puts it all on the table for the parties to consider at the same time, you know, to object. Okay, this you should not be considering, this you should not be considering. He gave the parties a chance to object or to respond. And with most of it, most of it, the trial counsel said, okay, yeah, go ahead and take notice of these current trial proceedings and how the defendant is behaving in those cases in determining whether he's fit here. And I think that's perfectly reasonable to look at, okay, he's in trial on three different cases. How is he behaving in those other two cases? If he is a model defendant doing everything he's supposed to in those two cases, that really has a strong bearing on, is he also fit here? By the same token, if he is unfit in those other proceedings, that is a strong indication that he should be found unfit here. Mr. Manchin, something I forgot to ask Mr. Wimmer was about the motion for a new trial. There was one file here, right? I believe so. And if I am remembering correctly, the motion for a new trial included as an issue the fitness finding made by the trial judge. So did Judge Schick in the hearing on the motion for a new trial comment on the defendant's trial testimony as further support for the fitness finding? I honestly don't recall. Okay. I do have one final point, if I may. Defense counsel said that if the trial court's finding was incorrect, we should be remanding for a new trial. That is not the standard. The standard would be for a new fitness hearing, and then only if the retrospective fitness hearing finds that he's unfit do we have a new trial. It would be go back for a new fitness hearing rather than a new trial if this court finds that the judge overstepped his bounds here. But I don't think this is a case where the court was prejudiced against the defendant or that he had predetermined that the defendant was fit. The trial court was simply trying to do his duty of making sure that this guy was fit in face of an expert who never, ever said that the defendant could not assist his attorney. Thank you. Thank you, Mr. Mann. Mr. Weber, rebuttal argument? Thank you, Your Honor. Briefly, with regard to the first claim, as opposing counsel points out, there was, you know, obviously Stieples demonstrated adequate rote memory. He didn't, you know, have amnesia or anything like that. But Dr. Frey never opined that he had any problem with his rote memory. It was his memory with interference that was the issue, his ability to deal with one subject, transition to another subject, and maintain focus and concentration appropriately throughout those changes. Secondly, again, just briefly on the first issue, opposing counsel, you know, notes at points that, you know, behavior, Stieples' behavior in the courtroom wasn't sufficient on its own to demonstrate, you know, unfitness to stand trial, that, you know, people who are fit to stand trial can behave as he does in the courtroom. It's important to remember that this is against the background of the only psychiatric opinion in this case, being that he's not fit to stand trial. The question isn't whether his behavior in the courtroom shows he's unfit. It's whether it provides a basis for rejecting the only expert opinion that was presented at the fitness hearing. Moving on to the second claim. The issue here is not whether or not the trial court improperly presented evidence outside of, you know, statutory procedures or something like that. Regardless of whether or not the court is obeying, you know, proper rules for presentation of evidence, which always under Illinois, I'm sorry, Illinois Supreme Court Rule 614, allows for the court to present its own evidence in any, you know, evidentiary proceeding. The issue is instead whether the trial court in its exercise of that authority has abandoned its neutral role and taken on essentially the role of advocating for a particular position. Now, opposing counsel noted correctly that when the trial court first appointed Dr. Marilyn Marks-Frey to conduct this examination, it stated it was erring on the side of caution. It didn't believe that, you know, it needed to. And at that point, it was clear it didn't think that there was a, you know, bonafide issue that would have required a fitness hearing or indeed required appointment of counsel. What's important for present purposes, though, is what the court says when it begins the hearing. It changes to a slight degree what it's saying about its prior observations. It now says that its appointment of Frey, quote, it wasn't based upon any observations. Actually, it was contrary to the observations of the court. But Dr. Report, Dr. Frey's report, the findings in and of itself that he wasn't fit and needed medication, I believe that to protect Mr. Steeple's due process right, I needed to hear all the evidence. I needed to review transcripts, his history, his ability to get along, unquote. Now, it's entirely fine and indeed probably unavoidable for the trial court to be surprised if he gets back an opinion that a defendant's not fit when he initially just appointed, you know, somebody out of an abundance of caution. Furthermore, as Your Honor noted previously, it's entirely appropriate for the trial court to rely on his own observations of the defendant in determining whether or not he's fit. And if those observations were, in fact, contrary to Dr. Frey's report, it would have been entirely consistent with the due process clause for the trial court to open the hearing, receive Dr. Frey's opinion, and if the parties didn't even want to present any more evidence, simply find him fit and reject Dr. Frey's opinion on the basis of his own observations. The problem here is that the trial court, rather than just relying on its own observations, begins the hearing by saying that, you know, basically I think Dr. Frey is wrong because of what I've seen, and then presenting a large volume of evidence he's investigated himself, essentially to back up his own observations. At that point, it's clear. I mean, the trial court is essentially advocating for a position. It is indicated that it's taken on the basis of its own observations. What was the evidence presented? The evidence presented was his disciplinary – Steeple's disciplinary and medical records from IDOC. Mr. Drake's testimony, he was presented as a court's witness. The transcripts of prior hearings were nominally admitted as a state exhibit, but the state didn't talk about them very much in closing argument, and it was the trial court that first obtained them. You heard the questions we raised to Mr. Manchin about identifying Mr. Drake. Do you have any additional information on that? No, Your Honor. Well, what if the court simply said pursuant to the statute, I want some additional information about this guy, as opposed to providing me further explanation. Would that have been improper? I don't believe so, Your Honor. In that case, I mean, obviously, any time the court, you know, essentially solicits additional evidence, things can get a little troubling. But in that case, you're actively sort of leaving things up to the parties, flagging, you know, what you believe potential issues are, and ultimately, you know, sitting in the role of receiving evidence rather than presenting it. If you had still had this statement at the beginning of the hearing, basically, that, you know, I've already decided. Well, what if the court said, I don't know what the evidence would be, but I want, you know, he's been in the joint, let's get his disciplinary records and find out what his last employer, recent employer, had to say. Would that have been improper? Again, it's an abuse of discretion standard, so it would be a question of whether or not that alone, in conjunction with other statements demonstrated by us. On its own, I don't think so. We're out of time, so unless there are any further questions. I don't see any. Thank you. Thank you both. The case will be taken under advisement and a written decision shall issue.